Good morning, everyone. The first argued case this morning is Number 13-1635 of Aviva Sports v. Fingerhut Direct Marketing. Mr. Lavin. Thank you, Your Honor, and good morning to all of the court. May it please the court, I'm Steve Lavin. I'm with the Clips Group firm, and I'm here on behalf of the appellant Manley, as well as the, on the cross appeal, Fingerhut, Kmart, and Menard, three of the retailers in the case. Many issues have been raised on this appeal, and I wanted to start with what I believe are the most, a couple of the most straightforward issues. The first being the seventh issue in my list of issues, which is the attorney fees and costs issue. The judgment that was entered by the court included an award to Aviva, the plaintiff in the case, of attorney fees as well as costs, presumably under the Lanham Act's attorney fee and costs provision. Now, Rule 54, as well as the Lanham Act, requires that a party receives costs and attorney fees. Not only must there be a finding of an exceptional case, but fundamentally, to begin with, that party has to be the prevailing party. Now, the district court made no determination of who the prevailing party was, much less that it was Aviva. So that fundamental preliminary question was never answered by the district court, making the award of attorney fees and costs erroneous. In addition, subsequent to the award on a post-judgment motion, the retailers, again, Kmart, Fingerhut, Menard, moved for a post-judgment award of their attorney fees. And in that motion, which was denied, the court made a finding, however, preliminarily, that these retailers were, in fact, the prevailing party in the case. Now, this court's precedent establishes that only one party or a line set of parties may be the prevailing party. The statute says, uses the word, the prevailing party. So the fact that no finding was made by the district court, as well as the district court's later finding that the retailers were actually the prevailing party, renders erroneous the district court's award of one point… What about the district court's finding that the case was exceptional with respect to the false advertising, the intentional false advertising? Certainly, there was a finding that the case was exceptional, but before you get to my reading of this court's law, as well as the basic statutes, Rule 54, which allows costs and attorney fees, as well as Lanham Act Section 1117, 8.3, which mirrors the language of the Patent Act, which we're all familiar with, that the court in exceptional cases may award reasonable attorney fees to the prevailing party. So the first determination is who's the prevailing party first. Well, there was a default judgment entered against your client. Clearly, they won. Correct. So they are the prevailing party. I don't understand your argument. Okay, so according to this court's case law, the prevailing party determination needs to be made on a view of the entire case in context, not just issue by issue. Yes, but they entered a default judgment against your client. Correct. So let's back up a second. There are two basic issues in this case. Plaintiff alleged false advertising under the Lanham Act and patent infringement. Vis-a-vis Manley, Manley won on the patent infringement claims. Manley lost, as you just pointed out, on the false advertising claims. So if the parties in the case were just Aviva and Manley, I agree with you, perhaps Aviva could be the prevailing party. Remind me, I thought that the patent infringement claims were they dismissed? They're dismissed with prejudice. Was that a voluntary dismissal? I don't remember the details. What were the circumstances? So there were three claims of the patent in suit that were asserted. By far and away, the main claim of the three was ruled non-infringed on summary judgment. A contested motion by Aviva against all of the defendants. The remaining two claims, which had just issued from a re-examination, fresh claims out of a re-examination, so there was no discovery from which to assert any damages, even if there was infringement of those claims, were kept alive after the summary judgment proceedings and subsequently dismissed for strategy reasons just before trial. So any fair reading of the patent side of the case, which the district court actually read it this way in the post-judgment motion by the retailers for attorney's fees, was that Manley and its retailers were the prevailing party on the patent infringement claim and the retailers were the prevailing party on the Lanham Act claim. But when it comes to determining who the prevailing party is for purposes of potentially awarding costs or attorney's fees, we have had many cases in which there has been some issues upon which one party prevailed, but the district court nonetheless concluded that the other side was the true prevailing party based on a conclusion that that was the primary issue in the case, that's the issue that took up all the time, and we've had a number of different cases in which district courts have done things like awarded attorney's fees but reduced them by some amount because he said, well, this amount really ought to be the amount that covers the issue on which they prevailed. I guess I'm not finding your prevailing party argument as a sort of de facto basis for eliminating all attorney's fees to be very persuasive, but I'm wondering, does your argument include some notion that perhaps here he awarded them the whole ball of wax, where possibly he could have said they prevailed on these issues and given his determination of exceptionality, he could have awarded a portion but maybe he shouldn't have awarded all. Exactly how far does your argument go is what I'm wondering. Judge Moore, I think in the particular circumstances of this case, especially the timing of these decisions and the content of the decisions, the result that we're asking for is the only reasonable result, and what I mean is the first order of business post-judgment was, or in the judgment, was for the court to respond to Aviva's request for attorney's fees and costs. In that response, the court never addressed the prevailing party. It didn't say anything about who was or was not the prevailing party. All it said was, this is an exceptional case. Pursuant thereto, I award costs and attorney's fees. Okay, fine. In a subsequent decision, post-judgment, the court said, and I quote, the retail defendants, I'm paraphrasing a bit, the retail defendants, not Aviva, are the prevailing parties within the meaning of Rule 54. In making that determination, the court considered Aviva's arguments, considered everybody's arguments, and said, on balance, looking at the whole case, the one and only prevailing party is these retailer defendants who defeated all claims against them. Now, the retailers were not awarded costs. They were not, because the court determined that it was not an exceptional case subsequent to that prevailing party determination. How do we take care of the requirement, the award of costs? It's an equitable matter. There was no debate. You're not really appealing the findings of discovery abuse. We are, Your Honor. We are. That's not your primary issue? Well, perhaps I should have started on a different issue because I don't want to use all my time. You're running quite short of time. I think it would be better if you turned to that aspect. Well, this issue is impactful because $1.8 million in fees and costs were awarded, which we think were clearly erroneous, and, in fact, Aviva doesn't even counter the argument that they were not the prevailing party. But if the district court was correct in the court's view of how the case proceeded, and particularly with the emphasis that he placed on the discovery responses, you have to overcome that hurdle, don't you, before you can object to the award of costs as an exceptional case or on whatever basis? No, I think that the prevailing party and exceptional case determinations stand alone, so everything else can stand theoretically, yet this court can reverse the district court's award of $1.8 million in attorney's fees and costs. But I'm confused about your argument about the retailers because he didn't award attorney's fees against the retailers. Subsequently, no. I sue both of you for something. I prevail against you. I don't prevail against him. Between him and I, he is the prevailing party, but as between you and I, I am the prevailing party, and you're asking for a rule of law which would prevent a court from awarding attorney's fees and costs to me despite the fact that I prevailed in my suit against you. That's my point about a holistic view. This court and the… No, we say holistic view of the case. We don't say with regard to every defendant. Each defendant stands alone. You may represent all of them, but they're each separate entities being sued. That's not, Judge Moore. My view of the law, which is the Shum case, the Manildra and Oracle case in the Northern District, is that even if there are all sorts of findings going every which way between various sets of parties, prevailing party determination is you take a look at the whole case, you find if there is one prevailing party, there is no more than one. That doesn't make any sense. I have a case against you and a case against him. I could have brought them into two separate cases. I win against you. I lose against him. I am the prevailing party against you in our case, and he is the prevailing party against me in our case. Okay. It may or may not make sense. You don't have much time left, and so I think that Judge Newton is right. It would probably make sense. The second issue that I've… Excuse me for speaking over you, Judge Moore. The second issue that I think is clear is the fact that the district judge, she never made any findings to support her standing determination. Manly objected to standings throughout the case. At the end of the case, just before trial, the district judge from the bench ruled that they have standing. She never made any factual determinations supporting that conclusion. Is this standing with respect to that the patent issues have been dismissed? Standing with respect to Aviva, the plaintiff, having standing to pursue false advertising allegations under the Lanham Act against Manly. She said they have standing. She never assessed, analyzed any facts, never made any factual findings anywhere in the record to support that ruling. So there's a procedural error. You're saying the ruling was wrong because it wasn't explained or that it was wrong on the merits? Both. So the first error would be procedural in the sense that without findings, and this is following the Patrician Towers case and the Canadian Lumber case from this court. Without findings, there's nothing we can't review whether it was correct or not. So the procedural error would require a remand for findings supporting standing. And then the substantive error that perhaps this court can assess the evidence of record since the case was litigated fully and find under the new precedent of Lexmark, the Supreme Court standing case in the Lanham Act. That the facts do not allow for standing in this case as against Manly or the retailers, which is the cross appeal. We can review the standing issue de novo, correct? You can review the standing issue de novo, but a de novo review of a conclusion without findings perhaps is a useless exercise. If the law is that a competitor who is adversely affected can bring a false advertising, unfair competition claim, that is it, isn't it? There are no facts to find. Well, yes, standing certainly can be pled. Allegations are sufficient at the pleading stage to allege zone of interest and proximate cause, which are the two factors under Judge Scalia's opinion in the Lexmark case. So here we have a fully litigated case. We've got all the way through summary judgment. All of Aviva's evidence was presented. So now at that stage of the case, there needs to be proof of standing, not just allegations. And under the proof, this court can assess standing vis-a-vis Manly, who the court said, the court specifically ruled on summary judgment, Aviva has not presented any evidence that anything Manly did in terms of false advertising or misrepresentation, the alleged misrepresentation, caused any harm, proximately or otherwise, to Aviva. Aviva's claim was for lost sales, and the court said, the only thing I see here is that Aviva lost sales because they weren't able to compete on price. It has nothing to do with the misrepresentation. So based on those findings, this court can reverse and say there was no standing against Manly and against the retailers. They're even one more step removed. And the court granted summary judgment to the retailers of no standing, which this court on the cross-appeal can affirm on the same basis, because the court there said that the causal chain was even more attenuated as to the retailers because they merely passed the alleged misrepresentations on to the ultimate consumer. And that's in our reply papers at 7 to 8. So that's the cross-appeal. I was going to ask, do you want to save some rebuttal time? We should hear from the other side. Or you can proceed as you prefer. I just want to say a quick bit about the sanctions imposed. The issue there was proportionality, and the issue was the court assessing sanctions, monetary sanctions, and saying you have to pay them immediately, rather than allowing us to say, okay, those sanctions orders will be incorporated in the final judgment. We'll take an appeal. The fact that the party didn't pay them immediately resulted in snowballing sanctions. So it was like a perfect storm of sanctions that compounded on each other for no other reason than the original basis for the original sanctions. And then the fact that the default judgment went to liability, not to damages, when all of the discovery issues resulting in the sanctions had nothing to do with liability. Liability was already litigated. The discovery issue was documents from China regarding cost of goods sold. And there are cultural differences here, too, that play into it, because a Chinese factory has boxes of documents in Chinese on both sides. They don't have spreadsheets with cost of goods sold and profits all broken out, and they're not under an obligation, even litigating here, to do more than produce the documents that they have, which they did. And I'll reserve a couple seconds for rebuttal. Okay. Thank you, Mr. Robin. Mr. Goode? Good morning, Your Honors. May it please the court I represent to viva. The core question on this appeal is whether or not the district court abused its discretion by granting a default judgment after repeated violations of court orders. That issue was not addressed in my opponent's argument, so I'm going to address it briefly. But first I want to address the issues that Mr. Lobbin addressed. First of all, prevailing party, Judge Moore, you have it exactly right. The Shum case does not mean that they have carte blanche. You pick prevailing parties as between Aviva and Manley, and then you pick prevailing parties as between Aviva and the retailer defendants. Otherwise, the Lanham Act becomes a dead letter as to Manley. No matter how egregious their conduct is, they cannot be sanctioned for exceptional case attorney's fees. That's not what Shum means, and Judge Moore, I think, analyzed that issue correctly. Second issue on the standing issue. Standing is a misnomer. That's the wrong word. Lexmark has made it clear there's no prudential standing anymore in Lanham Act cases. The question is whether the district court properly held that Aviva could sue Manley under the Lanham Act. Aviva and Manley are direct competitors. There's no question about that. There's no question that Aviva is within the zone of interest and has proximate cause as against Manley. The statement was made that the district court did not make any findings specifically about the standing issue. That is a false statement. That's not correct. During the summary judgment proceedings, Manley challenged Aviva's injury and its standing, and Aviva responded. The court found that Aviva had not shown actual damages, but that Aviva had shown injury and harm sufficient to seek injunctive relief and disgorgement. In other words, they had met the proximate cause and zone of interest test, even though the court wasn't calling it that. And that's at page A43 and 44 and A51 in the summary judgment order. The court made the same finding again in the disgorgement order that Aviva had, in fact, been harmed. Is it your view that Lendmark provides that a plaintiff can have standing under Lendmark if the only issue is disgorgement? Yes, of course. The statute so provides. It would be an odd thing if the statute provided the remedy of disgorgement, and the case law is clear that you do not have to have actual damages to seek disgorgement, but then Lexmark means that you can't seek that remedy. So that's absolutely clear. You just have to have injury that's proximately caused. You don't have to be able to prove it up in an actual damages sense. That's right, Your Honor. So those were the two issues that dominated, really, the discussion by Mr. Lobben. I want to address the core issue, which is, did the district court abuse its discretion by granting a default judgment? And that issue, I don't need to belabor the facts of what happened. It's really uncontested, even here today, that Manley repeatedly violated multiple court orders. It's uncontested, even here today, that Manley did so intentionally. I think we know all the facts, and I'm sure that you would love to tell us how awful they were, and your client would love to have that on the record. But I don't think we need it. I'd rather have you move, if you don't mind, to your cross appeal. I mean, if my colleagues want to ask questions on that, I'm sure they will. But why don't you move on to your cross appeal and address that? Because that, to me, raises this interesting Lexmark issue. I'd like to hear your thoughts on that. Very good, Your Honor. So the first thing to realize about the cross appeal is that the basis of the district court's order was based on the old law of prudential standing and these three different tests that were prevalent in the circuit courts of appeals. And so the entire basis of the district court's decision is now gone, because there is no prudential standing. So we have to analyze the case under the Lexmark rule, and this court should reverse the finding that Aviva did not have standing against the retailer defendants, because Aviva clearly has a cause of action under the Lanham Act against the retailer defendants. Now let's review what the facts are. The retailer defendants, under the facts that are in the record, published false advertising that was in direct competition with Aviva. In other words, they sold manly products that photoshopped kids and made them a lot smaller to deceive customers. And they used product pictures that were a lot bigger to deceive customers. The actual acts leading to the deception, the photoshopping of downsizing people to make the product look larger and all of that, all that was done by manly, correct? That's absolutely right, Your Honor. But there was no dispute as to their lack of knowledge as to the doctrine of the advertising. Is there? I don't recall anything saying that they were culpable one way or another in having participated in the production of those pictures. They did not participate in the production. They clearly were culpable. And there's evidence in the record. Now, were they culpable because they used the advertising? They were culpable because they used the advertising. Not because they knew it was false. They did know it was false, Your Honor. From the moment we sued, they knew it was false because it was in the complaint. We told them it was false, and they continued to publish the false advertising throughout the case. That's number one. Number two, they received customer complaints, or actual customer complaints coming in to their customer service that showed that it was false. So they knew about that. And so it's not correct to say that they weren't individually culpable. But where we're at in the case is, was it correct for the district court to rule that Aviva had no cause of action under the Lanham Act against the retailers? That's the issue in the case. That's what should be reversed. And it should be reversed because under Lexmark, Aviva's clearly within the zone of interest. We are seeking... Why? Can I ask you, why are you pursuing this? You've got your full measure of damages from Manly. You can't double-dip. You can't get damages from the retailers for the same profit loss that you suffered that you already got from Manly. So I guess whether you're right or wrong about the legal points, I just don't understand the point because why send it back? You can't get damages twice. The practicalities of that, there's two things. First, we don't have any damages because they don't pay. That should be clear. And we're working on that. But number two, it's not a double-dip. Under the Lanham Act, we got disgorgement of Manly's profits. The retailers separately profited over and above what Manly got. And under the Lanham Act, we're entitled to seek that disgorgement. Otherwise, they're unjustly enriched and benefiting from the same false evidence. They make profits. Your argument is, right, that our two products were put side-by-side by the retailers. Yes. If the retailers hadn't allowed Manly's product with its false advertising to be on the shelf, everybody would have bought yours instead, right? The retailers are going to get the same profit, whether it's selling your product or selling their product. I don't understand your theory of damages. You can't disgorge them of their profit because they didn't care whether they sold Manly's product or they sold your product. It didn't matter. They were going to achieve some measure of profit, regardless of which one was sold. So you may have lost out on what portion of profits you would have got that Manly got. But I don't understand how you can go after their profit. Your Honor, that would, I respect what you say and I understand what you're saying, but I think that's given them a pass on the Lanham Act that they're not entitled to. They're not entitled to be unjustly enriched by false advertising that they know about and the disgorgement remedy applies to them. They're unjustly enriched, but had they not sold Manly's product, they would have sold yours. And so they would have still gotten that same measure of profit. Maybe. We don't know that. And they did sell Manly's. They were unjustly enriched. And also, Your Honor, that's not the issue on appeal. The issue on appeal is whether we've alleged a cause of action against them, whether the court should find in reverse that there's a cause of action. So we're clearly within that zone of interest because we're trying to recover where we've been harmed by this. So Counselor, I'm listening to your argument, but I'm still concerned as to whether the approximate test was satisfied. I mean, did you actually prove or were you able to show that there's this connection between the retailers and their sales and the false advertising? Isn't that why it was dismissed? Your Honor, it was not dismissed for that reason. Remember, it was dismissed under the old test where the court was looking at, are we direct competitors? And the court said, we don't meet the test because we're on a different level of the distribution chain. That law has been abolished. Lexmark has said the district court is wrong. So the whole basis of why we were dismissed is gone. And Lexmark clearly stands for the proposition that you are not making this artificial line and saying, well, you have to be at the same level of the distribution chain to have proximate cause. Instead, it's really like... But you still have to prove a connection between the false advertising and some injury that's caused by the retailers. And we did, Your Honor. Let me address that. So Mr. Bohol testified directly, our executive directly, that look, we are out there selling on the Internet against these retailers directly. We're not making any sales because their product is cheaper and it looks bigger, number one. So we're harmed that way, directly. The retailers are... Every time they make a sale of a falsely advertised product, that's potentially a lost sale for us. At the start of this case, there were only a couple of us in this market. As the case went on, there were more. But we definitely fall within the zone of interest and we can show and did show proximate cause in the record. Again, remember, we're not trying to prove this at the state of the case where we're trying to prove actual damages or prove disgorgement. We're at the state of the case, do we have a cause of action? And Lexmark says, proximate cause test is about can you say that the injury that's caused is traceable to you and it's the type of injury the Lanham Act recovers. Its example is really instructive because it says, look, the harm is a harm to sales or a harm to reputation. That's what we have here. That's what Mr. Bohol testified to. What's not okay under the proximate cause test, it's Hadley versus Baxendale, it's back to first year law school, Your Honor. It's your landlord can't sue. Your vendor can't sue. Some supplier goes bankrupt because you couldn't pay them. That injury is too indirect. Another thing, you can't sue every retailer that's selling the product. You can't pick up the name of every retailer throughout the United States that's selling the product and sue them. You've got to show some sort of connection. Well, we sued three retailers who knew that this advertising was false, continued to sell it after we told them, and because they were selling Manley's products in competition with ours, we lost sales. That's what the testimony is. Now, that's within the zone of interest. That's proximate cause under the Lexmark test, sufficient to create a cause of action, Your Honor. Remember, we're not at the stage of the case where we're trying to prove a specific amount of damages, actual damages, disgorgement. That all comes later. We're just trying to decide whether we fit Justice Scalia's and the Lexmark case's definition of a party who's entitled to sue. You would really be changing Lexmark if you said a competitor who's selling products against Manley's products, trying to get sales against these retailers and losing sales can't sue because they're on a different level of distribution chain. That would really limit Lexmark in a way that Lexmark clearly does not intend. Well, Lexmark is clear that you can sue even in the absence of direct competition, which is the situation you have here, but it also says expressly but it's going to be much harder. I mean, it firmly, what does it say? We'll have a harder time establishing proximate cause. That's the exact language from Lexmark when you're not direct competitors. You're not a direct competitor with the retailer, right? I mean, I'm understanding the facts right. We are a direct competitor with the retailers because we both sell over the internet to customers. We just don't sell very many because our competition has been thwarted by false advertising. So we are a direct competitor with the retailers head-to-head on the internet. That's all in the record. The judge found that the level was too low. It was too de minimis to meet the old standing test. So not a correct assumption. We are a direct competitor. So am I to understand your argument that even if the law is that if you recover damages at the wholesale level, you can't recover again at the retail level, that you still had a cause of action against the retailers? I missed the premise of the question. I'm sorry, Your Honor. I'm trying to understand when you tell us  You can't be kept out of court if, in fact, there was a wrong that injured you one way or another. But if, in fact, that injury, as a matter of law, is deemed compensated at what I'll say the wholesale level of the level at which you were selling so that there's no way you could obtain damages from the retailers, nonetheless, you're saying that the cross-complaint should not, or the complaint against the retailers should not have been dismissed. You know, that's right, Your Honor. Let me parse that if I could. Now, we're trying to decide whether we have a cause of action against the retailers at all. Do we meet zone of interest? Do we meet proximate cause? At that level of the analysis, we're not trying to decide whether we're double-dipping or have already been compensated. So we have asserted a cause of action under the Lexmark test. The suit should be allowed to proceed. Then later, there would be a subsequent analysis. Are we entitled to damages against the retailers? Or are we double-dipping? But when the district court dismissed the retailers, wasn't that a decision on entitlement? It was, but it was under the old defunct prudential standing test. And I guess the last point I would leave you with, I see that I'm in the red here, Your Honor, is that we're not double-dipping. We're only seeking the retailers' profits, and they shouldn't be allowed to keep those wrongful profits. Thank you, Your Honor. Okay. Thank you, Mr. Vinn. Mr. Lobbin, it says 11 seconds. I have 10 seconds. Let's add a couple of minutes. We'll be in the pool. Thank you, Your Honor. I want to fully address all of your questions. I wanted to first address Judge Rayna's point. This was a summary judgment determination on the cross-appeal. The court said, based on all the evidence, there's no standing against the retailers. This is not a pleading issue. They have to ultimately prove standing, and the court itself said that this is a jury question. It can't resolve factual disputes. Why did the retailers not take down the ads once they knew that they were false? You know, I can't quote any record evidence on that. There is record evidence that the retailers were informed of the falsity, and in fact, some customers called in and said and complained about that,  that were much, much smaller than what the pictures depicted. I think, frankly, the relative size of these retailers and the product line, just something either fell through the cracks, or they... Assuming that the record does have that evidence, wouldn't you say that that's enough to establish approximate cause? Well, I think, under the Lexmark standard, the district court's analysis still holds, and the district court said, at the summary judgment stage, that the causal chain was too attenuated as to the retailers. The retailers merely passed the alleged misrepresentations on to the ultimate consumer. So, the district court assessed that evidence. I get that, but your opponent and the record evidence suggests that the retailers themselves were made aware. It's not a retailer who's getting products from the manufacturer and they're prepackaged and they're selling them that way, but in this case, the retailers were made aware of the falsity of the advertising and the marking on the packages, and yet they continue to advertise and sell. Well, perhaps there was a communication that ostensibly made them aware. There are also... There's record evidence of people responding online that these are great products and they're fantastic and I love it, and so it's not a one-sided issue. It's not like a stark record that shows that anyone in their right mind... It's enough to raise a reasonable question as to approximate cost, correct? Well, I think that's the issue that the court addressed in summary judgment. That's what we're reviewing here, whether the district court got it right on summary judgment, and the district court said, as the retailers, this is much too attenuated and there's no proximate cost as to the retailers because they were not... Not only were they not at the same level of the distribution chain or competitor, but they passed on these misrepresentations to the ultimate consumer. It was too attenuated, and VIVA's evidence only suggested price competitiveness was the proximate cause of their alleged injury, not misrepresentations. Okay. Okay, so that... Thank you, Mr. Levin. If I may, I don't know if I get this 20 seconds here, but I... It's over. I'm done. Okay, thank you. We'll figure it out. Thank you, Your Honor. Thank you.